UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                          Plaintiff,

-vs-                              **SUPPLEMENTAL AFFIDAVIT**
                                   05-CR-6116 CJS

VIOLETTE GAIL ELDRIDGE, MELVIN
RAY LYTTLE, PAUL E. KNIGHT and
JOHN L. MONTANA, JR.,

                          Defendant.

---

STATE OF NEW YORK >
COUNTY OF MONROE > ss.:

      Christopher S. Ciaccio, being duly sworn, deposes and says as follows:

      1. The Government's case "piggybacks" on an extensive investigation conducted by the Securities and Exchange that resulted ultimately in a finding of summary judgment against the Defendant.

      2. In order to build its case, the Securities and Exchange Commission in 2001 issued numerous subpoenas and Freedom of Information requests in 2001 to a variety of financial institutions where the Defendant was, as I understand it, holding investor funds in the name of First National Equity LLC (see, Exhibit A).

      3. It also subpoenaed the records of the First National Equity LLC (Exhibit B).

      4. Upon information and belief, those records were received long before September 2004, and it is believed, as early as 2001. The records indicated that First National Equity LLC transferred money to accounts with ABN AMRO Hungary. The

records were a complete record of all transactions First National Equity LLC with ABN-AMRO.

5. It was not until May 25, 2005 that the SEC issued a subpoena to ABN-AMRO (Exhibit C).

6. Thus, the Government's application for suspension of the Statute of Limitations was made in bad faith. It already had all the information it wanted or needed, since the records subpoenaed and received by the SEC in 2001 were complete and authentic records of transactions between First National Equity LLC and ABN AMRO. That much was apparent on the fact of the records. Otherwise, why would the SEC subpoena the records of numerous other financial institutions but not those of ABN AMRO, when it knew ABN AMRO was a depository for First Equity funds?

7. Thus, when the Government applied for the suspension order, it did so not because it reasonably believed evidence was in Hungary, but because it had dragged its feet in getting the case indicted and needed more time. Section 3292 of Title 18 of the U.S. Code provided a convenient, but disingenuous solution.

8. Defendant requests that the Court order that the suspension order be vacated and the indictment dismissed because it was instituted beyond the Statute of Limitations. Alternatively, the defendant requests that the Court direct that a hearing be held regarding the quantum of knowledge and documents the SEC and the government had regarding ABN AMRO at the time it requested the subpoena.

*[signature]*
Christopher S. Ciaccio
Counsel to the Defendant, Melvin Lyttle

Sworn to before me this 20th day of April, 2007.

_____
Notary Public

MELISSA A. DiGREGORIO
Notary Public, State of New York
Monroe County, Reg#01DI6039074
My Commission Expires March 20, _____