UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

vs.

MELVIN LYTTLE,

          Defendant.

DECISION AND ORDER
05-CR-6116

_____

## INTRODUCTION

This matter is presently before the Court for a determination of the defendant's competency to proceed to trial. For the reasons stated below, the Court finds that the defendant is competent to stand trial**.**

## PROCEDURAL AND FACTUAL BACKGROUND

**A.     September 29, 2005 to August 28, 2005**

On September 29, 2005, the defendant was arraigned on a multi-count indictment charging him, along with three co-defendants, with conspiracy to commit mail and wire fraud, conspiracy to commit money laundering, and substantive acts of mail fraud, wire fraud, and money laundering in connection with a high yield investment scheme. He appeared at arraignment with his court appointed attorney, Fred S. Gallina, Esq. Based upon his Pre-trial Services Report, he was released from custody. Under the heading of Health, the report, dated September 29, 2005, read:

> Melvin Lyttle suffers from the following medical conditions as documented by
> Dr. Michael Dragan: Anxiety Disorder, Coronary Artery Disease with Heart

Catheterization twice and coronary angiography, Irritable Bowel Syndrome from Diverticulitis severe hypertension, lumbar disc disease and Type-2 Diabetes.

Current medications include: Lotrel, Diovan HCT, Lexapro, Lipitor, Nitroglycerin, as needed. It should be noted that Mr. Lyttle is prone to anginal chest pains especially with elevated blood pressure and stress.

In a letter application dated January 5, 2006, that was not docketed, Mr. Gallina sought to have home confinement with electronic monitoring removed as a condition of the defendant's release. In support of his request, Mr. Gallina included a five page letter from the defendant dated December 27, 2005, which the Court has annexed as Addendum #1 to this decision.

By notice of motion (Docket # 33), filed on October 19, 2006, Mr. Galina sought to withdraw as the defendant's counsel. In his sealed affidavit (Docket # 34) in support of his application (which the Court now unseals), Mr. Galina stated:

> 5. That your deponent has attempted to communicate the importance of considering a possible plea to resolve the matter before the Court; however the Defendant refuses to even consider the appropriateness of this course of action.
>
> 6. That your deponent has met with resistance to these discussions is an understatement. The Defendant continues to believe that there may be some intervention by foreign government officials on his behalf and that your deponent has lost his ability to appreciate the Defendant's position on various matters.
>
> 7. That your deponent verily believes that it is difficult, if not impossible, to represent the Defendant properly under the circumstances and that Defendant would be better served with another attorney who could establish some rapport and professional trust needed to go forward in this matter.

On October 24, 2006, the Court granted Mr. Gallina's motion to withdraw and appointed Christopher S. Ciaccio, Esq., the defendant's current counsel, to represent him.

On March 1, 2007, Mr. Ciaccio filed his omnibus motion on the defendant's behalf (Docket # 55 ), which was argued before the Court on April 23, 2007. On May 11, 2007, the Court filed a Pre-trial order (Docket # 75) , setting October 15, 2007 as the date on which the jury trial was to commence. However, on October 1, 2007, the Court received a letter, dated September 27, 2007, from the defendant's primary care physician, Michael K. Dragan, M.D., indicating that the defendant had been referred to Barry Dick, M.D., a vascular surgeon,  to correct a 100% blockage in his right external artery. As a result, it was necessary to adjourn the October 15, 2007, trial date.  Dr. Dick in fact operated on the defendant on October 18, 2007.

Following his surgery, the defendant filed a *pro se* application captioned an "Emergency Motion," along with a supporting affidavit (Docket # 132), in which he sought to have Mr. Ciaccio replaced as his counsel. His supporting affidavit consisted of nine pages, along with an attached exhibit consisting of e-mail communications. Mr. Ciaccio submitted an affidavit in response (Docket # 134). The Court scheduled a court appearance on September 10, 2008, at which time the defendant's application was discussed. The next day, September 11, 2008, the Court held an *in camera* proceeding, concerning the motion, with the defendant and Mr. Ciaccio, which was taken down by a court reporter and sealed (Docket #141). Based upon the papers and proceedings, the Court denied the defendant's application.

For reasons unrelated to the pending application, the trial was further adjourned, and subsequently by Pre-trial order (Docket # 201) filed on June 9, 2008, was scheduled to begin on September 8, 2008.

On May 21, 2008, Mr. Ciaccio filed a notice of motion seeking to modify the conditions of the defendant's release (Docket # 194). Mr. Ciaccio's supporting affirmation (Docket # 195) attached, as Exhibit C, a three page letter from the defendant.

On August 5, 2008, the defendant filed his second *pro se* "Emergency Motion" requesting the appointment of new counsel (Docket # 222). In his six page affidavit, supported by three exhibits, the defendant detailed the basis for his application. At a court appearance on August 6, 2008, that had been scheduled concerning unrelated matters, the Court heard from Mr. Lyttle and Mr. Ciaccio, and after doing so, denied the application.

**B.     August 29, 2008 to Present**

By notice of motion filed on August 29, 2008 (Docket # 231), Mr. Ciaccio, on behalf of the Defendant, filed a motion for an order granting a hearing to determine the mental competency of the Defendant. In his affirmation in support of his application, Mr. Ciaccio stated:

> 4. As set forth in the attached medical reports, Mr. Lyttle has a condition in his brain that was identified in a May 21, 2008 MRI as a "ring-enhancing lesion with a hypodense center with surrounding edema in the deep posterior lobe." A second MRI showed the lesion to be a "demyelinating process, a process which could destroy or damage the nerves."
>
> 5. The report of Dr. Otte dated August 29, 2008 also states that the MRI tests were necessitated by Mr. Lyttle's complaints of dizziness, headaches, difficulty walking, etc., suggesting, although it is not spelled out, that the lesion could be the cause of the symptoms. Mr. Lyttle's weakness in the right side of his body is "obvious."
>
> 6. Mr. Lyttle also informs me that he is having problems with short and long term memory, being unable to remember conversations, names of persons, dates, etc.
>
> 7. Accordingly, Mr. Lyttle's condition, although related to a physical finding, constitutes a mental defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense. At the present time, due

4

> to his headaches and dizziness, he is unable to speak about the substantive defense issues. I doubt he will be able to participate in a meaningful fashion with jury selection, cross-examination, or any other aspect of the trial.
>
> 8. Moreover, the trial may interfere with his need for immediate tests and treatment.
>
> 9. I am also concerned that for whatever reason Mr. Lyttle's thought processes lack a rational foundation, thus making it difficult for him to participate in his defense.
>
> 11. Accordingly, request is made for an examination and hearing to determine the mental competency of this defendant to assist properly in his defense.

As a result of Mr. Ciaccio's application and the issues it raised concerning both the defendant's mental and physical ability to proceed to trial, the starting date for the trial was postponed one week to September 15, 2008. At a court appearance on September 12, 2008, the Government made an oral motion to sever the defendant from his three co-defendants, which the Court granted.

In regard to the defendant's ability to proceed to trial, the Court received letters dated September 3, 2008, October 13, 2008, October 15, 2008, November 11, 2008, and November 20, 2008, from Ty Brown, M.D., the defendant's treating neurologist. Copies of these letters are attached to this decision as Addendum # 2.

Based upon Dr. Brown's October 15, 2008, correspondence, the Court authorized Mr. Ciaccio's request for a neuropsychological examination of the defendant by Thomas Sullivan, Ph.D. In a report dated November 13, 2008, Dr. Sullivan stated:

> 1. The lesions found on Mr. Lyttle's brain have not caused a significant deterioration in his mental functioning. His intelligence, attention, memory, and language skills are sufficient for him to understand courtroom proceedings, and participate in his defense.

2. Mr. Lyttle has a delusional disorder.

3. Because of his Delusional Disorder, Mr. Lyttle is not capable of participating in his own defense. Because of his mental illness, he cannot adequately discern fact from fantasy. In addition, Mr. Lyttle's Delusional Disorder appears to be interfering with his ability to trust his defense counsel and interact with counsel sufficiently to defend himself.

4. Physicians have indicated that Mr. Lyttle is not able to travel at this time because of his medical problems. Such a determination is beyond the expertise of a neuropsychologist such as myself.

In addition to the neuropsychological examination by Dr. Sullivan, the defendant, as reflected in Dr. Brown's November 20, 2008, correspondence, was referred to Istvan Pirko, M.D., a neurologist, specializing in demyelinating disorders. Dr. Pirko diagnosed the Defendant as suffering from multiple sclerosis. In a report dated December 22, 2008, Dr. Pirko observed, "[g]iven the time of lesion development and the history, the most likely explanation is tumeactive presentation of MS." In that same correspondence, Dr. Pirko wrote, " [i]t appears the legal system tries to label him as delusional, and of note there was absolutely nothing during my 90 minute encounter with him that would make me think that he is delusional." In a subsequent report dated February 9, 2009, Dr. Pirko assessed the defendant as "57 year old man with newly diagnosed MS."

In response to the opinions of the Defendant's treating physicians, Dr. Brown and Dr. Pirko, and his retained expert, Dr. Sullivan, the Court granted the Government's request that the defendant submit to a medical and psychological examination at the Lexington, Kentucky Federal Medical Center (Docket # 314). In a report dated, April 24, 2009, prepared by Judith (Betsy) Campbell, Ph.D., Forensic Psychologist, and reviewed by Michael Helvey, Ph.D., Chief Psychologist, Dr. Campbell reached the following diagnostic impressions:

6

| | | |
|---|---|---|
| Axis I: | 309.24 | Adjustment Disorder, Chronic, with Anxiety |
| | V65.2 | Malingering |
| Axis II: | 301.9 | Personality Disorder Not Otherwise Specified, with Antisocial, Histrionic, Paranoid, and Narcissistic Features |

She concluded :

> In summary, a finding of competency to stand trial requires the defendant to have a factual and rational understanding of the proceedings against him and sufficient ability to consult with his attorney with a reasonable degree of rational understanding. While Mr. Lyttle attempted to portray himself as neurologically impaired and unable to remember and concentrate, the information gathered over the course of the evaluation, in the opinion of the undersigned, examiner, supports a finding that Mr. Lyttle is mentally competent to stand trial

Significantly, at the request of his treating neurologist, Dr. Pirko, the defendant was examined by another neuropsychologist, Daniel Gripshover, Ph. D. In his report issued on or about May 22, 2009,[1] Dr. Gripshover concluded:

> Previous evaluations have raised the question of a delusional disorder. The patient adamantly denied delusional thoughts and provided documents in support of his beliefs and assertions. Furthermore, his wife indicated that she has never observed him to have psychotic thoughts or behaviors, and also described realty based events that supported the patient's belief system. Pending additional data, I do not find sufficient evidence of a psychotic thought disorder at this time.

Pursuant to Mr. Ciaccio's application (Docket # 231), the Court held a competency hearing on September 3 and 4, 2008. At the outset of the hearing, Mr. Ciaccio clarified that the defendant was no longer challenging his physical ability to stand trial. Two witnesses testified at the hearing: Dr. Sullivan for the defense and Dr. Campbell for the Government.

---

[1]While Dr. Gripshover's report is not dated, according to a letter he wrote to Mr. Ciaccio dated April 22, 2009, he expected his report to be completed by May 22, 2009.

The defendant and the Government stipulated into evidence the November 13, 2008, report of Dr. Sullivan (Exhibit A), the April 24, 2009, report of Dr. Campbell (Exhibit # 2), as well as the curriculum vitae of both psychologists (Exhibit B and # 1, respectively. Additionally, based upon a telephone conference the Court held with Mr. Ciaccio and Assistant United States Attorney Bradley Tyler on July 27, 2009, the Government and the defendant agreed to stipulate into evidence the report of Dr. Gripshover, which the Court has received as Court Exhibit # 1. Significantly, Dr. Sullivan and Dr. Campbell each utilized a psychological test called the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") and each indicated that the defendant received an elevated score based upon his responses to the validity scales. Both further acknowledged that one possible explanation for such elevated score was malingering or exaggeration of symptoms. However, while Dr. Campbell concluded based upon her overall assessment that the Defendant was in fact malingering, Dr. Sullivan, although considering this possibility, ruled it out in reaching his opinion.

At the conclusion of the hearing, the Court gave the defendant and the Government until June 30, 2009, to submit a post-hearing memorandum of law. On June 30, 2009, the Government filed its submission. However, by letter dated June 30, 2009, Mr. Ciaccio, on behalf of the defendant, in pertinent part, wrote:

> I am not making a submission with regard to the outcome of the competency hearing because my client has asked me to move to withdraw any opposition to the Government's effort to have him declared competent.

## Standards of Law

### A. The Statute and Legal Test

In pertinent part, 18 U.S.C. § 4241 states:

> Determination of mental competency to stand trial
>
> (a) Motion to determine competency of defendant.–At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.
>
> (b) Psychiatric or psychological examination and report.– Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c).
>
> (c) Hearing.–The hearing shall be conducted pursuant to the provisions of section 4247(d).
>
> (d) Determination and disposition.–If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

The legal test of a defendant's competency to stand trial is found in *Dusky v. United States*, 362 U.S. 402 (1960):

> [W]hether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings.

*Id.*

**B.     Burden of Proof**

The issue arises as to whether the Government bears the burden of establishing competency, or the defendant bears the burden of establishing incompetency. The relevant statute, 18 U.S.C. § 4241, is silent on this point, indicating only that the Court must find by a preponderance of the evidence that the defendant is incompetent to stand trial. The legislative history is also silent. Finally, this Circuit, although acknowledging that "[t]he federal statute providing for competency hearings does not allocate the burden of proof, and neither the Supreme Court nor this Court has decided as a matter of statutory construction whether the government or defendant bears the burden," declined to decide the issue. *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995). The Supreme Court, however, commented on this issue in *dicta* in *Cooper v. Oklahoma*, 517 U.S. 348 (1996):

> Indeed, a number of States place no burden on the defendant at all, but rather require the prosecutor to prove the defendant's competence to stand trial once a question about competency has been credibly raised. The situation is no different in federal court. Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence. 18 U.S.C. § 4241.

*Id*. at 361-362. Following, *Cooper*, the Eastern District of New York concluded, "[r]ecently, however, the Supreme Court provided guidance, explaining, albeit in *dicta*, that under Section 4241 it is the accused who must prove incompetence." *United Stated v. Gigante*, 996 F. Supp. 194, 199 (E.D.N.Y.,1998). In reaching its conclusion, the Eastern District relied on *United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir.1994), *cert. denied*, 515 U.S. 1133, (1995), where the Seventh Circuit stated "[t]he starting point ... is the notion that a criminal defendant is presumed to be competent to stand trial and bears the burden of proving otherwise." *Id.* at 1373. This Court agrees with *Gigante*. However, the Court

further notes that even if the burden of proof was allocated to the Government instead of to the defendant, the evidence presented to the Court, as discussed below, conclusively establishes the defendant's competence to stand trial. Accordingly, whether the Government or the defendant bears the burden would not change the Court's conclusion. In that regard, the Supreme Court has explained, "the allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Medina v. California*, 505 U.S. 437, 449 (1992) (interpreting California state law).

**C.** **Factors**

"In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *United States v. Nichols*, 56 F.3d at 411 (citation omitted); *see also United States. v. Quintieri*, 306 F.3d 1217, 1233 (2d Cir. 2002) ("A district court must consider many factors when determining whether it has "reasonable cause" to order a competency hearing. *Id.* The district court's own observations of the defendant's demeanor during the proceeding are relevant to the court's determination....").

## ANALYSIS

As clarified by the Defendant and the Government at the competency hearing, both agree that the defendant has a rational as well as factual understanding of the proceedings. *Dusky v. U.S.*, 362 U.S. at 402. Consequently, the only issue for the Court to resolve is whether he has sufficient present ability to consult with his lawyer with a

11

reasonable degree of rational understanding. *Id.*

In resolving the question of the defendant's competency, the Court first considers its own observations. At the outset, the Court observes that it was not until August 29, 2008, almost three years after he first appeared before the Court, that the defendant's competency was challenged. While the defendant may have been a difficult client with respect to his refusal to consider a plea agreement and his commitment to his own particular strategy of defense–as evidenced in Mr. Gallina's affidavit in support of his application to withdraw–this does not mean that he lacks the ability to assist his attorney. Although the Pre-trial Services Report, dated September 29, 2005, indicated that the defendant suffered from anxiety disorder, Mr. Gallina, a very experienced criminal defense attorney, never requested a competency determination during the approximately thirteen months that he represented the defendant, and Mr. Ciaccio, an equally experienced criminal defense attorney, never requested a competency determination until August 29, 2008, some twenty-two months after he began his representation of the defendant. Beyond this fact, the Court had the chance to interact with the defendant during court appearances and more extensively in the *in camera* proceeding on September 11, 2007. The defendant always appeared to the Court to be intelligent, oriented in time and place, and very aware of the facts and circumstances related to his case. He responded to the questions that were put to him in a coherent fashion. Additionally, the defendant's own submissions to the Court, his two motions to change counsel and the two letters he submitted in support of first Mr. Gallina's and then Mr. Ciaccio's request to modify the conditions of his release, evidence his ability to "to consult with his lawyer with a reasonable degree of rational understanding." *Id.*

Turning to the competency hearing, the Court finds the opinions expressed by Dr. Campbell and her ultimate conclusion that the defendant is competent to stand trial more convincing for several reasons. As evidenced by their curriculum vitae, both Dr. Sullivan and Dr. Campbell have impressive qualifications. However, while Dr. Sullivan observed the defendant for seven hours on November 6, 2008, in a solely clinical environment, Dr. Sullivan supervised a forty-five day inpatient examination of the defendant, during which she had the opportunity to observe him in a non-clinical setting. Moreover, although Mr. Ciaccio's affirmation in support of his motion for a competency hearing suggested organic deficits as a basis for incompetency, both Dr. Sullivan and Dr. Campbell agree that the defendant does not suffer from any physical condition that would impair his competency. Additionally, Dr. Sullivan, in contrast to Dr. Campbell, dismissed the observations of the defendant's wife, Susan Lyttle, who reported that her husband acted in a normal manner and that she had never observed the defendant experiencing delusions. In this regard, the Court agrees with Dr. Sullivan, and finds that it would be unusual to spend twenty-four hours a day with a person purportedly suffering from delusions and never observe any irrational or abnormal behavior whatsoever.

Next, the Court accepts Dr. Campbell's analysis of the defendant's elevated score on the F-scale of the MMPI-2 psychological test as more persuasive than that of Dr. Sullivan's. Dr. Campbell concluded that such elevated score was consistent with an attempt to manipulate the test. Dr. Sullivan, on the other hand, concluded that the elevated score could better be explained as indicative of a delusional disorder rather than malingering. In placing more credence in Dr. Campbell's opinion, the Court considers the timing of the defendant's request for a competency hearing, less than two weeks before

the scheduled trial, as well as Dr. Sullivan's own suggestion that the defendant was exaggerating his symptoms. As to the latter, Dr. Sullivan, on page 10 of his report under the heading of Memory, wrote: "Mr. Lyttle complained vociferously about his memory functioning. However, his performance on standardized tests of memory was consistently good."

Furthermore, in reaching her determination of the defendant's competency, Dr. Campbell spoke by telephone, in the defendant's presence, with Boris Parad, the attorney who represented the defendant in a related civil proceeding before the Securities and Exchange Commission. In regard to this conversation, there was no indication that the defendant had any trouble working with Mr. Parad. On the other hand, the defendant told Dr. Campbell that he did not respect Mr. Ciaccio and wanted someone else to represent him. While the defendant may be unhappy with Mr. Ciaccio, his apparent ability to work with Mr. Parad suggests that he is able, if he so chooses, to consult with Mr. Ciaccio with a reasonable degree of rational understanding.

Finally, the defendant's own treating neurologist, Dr. Pirko, and the neuropsychologist to whom he referred the defendant, disagree with Dr. Sullivan's conclusion that the defendant has a delusional disorder. In his December 22, 2008, report, issued more than a month after Dr. Sullivan's, Dr. Pirko indicated that there was nothing in his examination of the defendant that led him to believe that the defendant was delusional. Likewise, in his report issued approximately six months after Dr. Sullivan's, Dr. Gripshover, stated "I do not find sufficient evidence of a psychotic thought disorder at this time."

## CONCLUSION

Accordingly, the Court finds by a preponderance of the evidence that the defendant is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). It is So Ordered.

DATED: Rochester, New York
July 31, 2009

ENTER.

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge